# THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

**LISA BARNES-McNEELY**                                                            **PLAINTIFF**

**v.**                                 **CASE NO. 5:08-CV-00199 BSM**

**ARKANSAS DEPARTMENT OF**
**CORRECTION, LARRY NORRIS,**
**Director of the Arkansas Department of**
**Correction, in his individual and official**
**capacities; KEVIN MURPHY, Director of**
**Human Resources, in his individual and official**
**capacities; ARKANSAS BOARD OF**
**CORRECTIONS; DREW BAKER, Board Member,**
**in his individual and official capacities; MARY**
**LOUISE PARKER, Board Member, in her**
**individual and official capacities; LEROY**
**BROWNLEE, Board Member, in his individual**
**and official capacities; WILLIAM FERREN, Board**
**Member, in his individual and official capacities;**
**ALONZO JILES, Board Member, in his individual**
**and official capacities; BENNY MAGNESS, Board**
**Member, in his individual and official capacities; and**
**KELLY PACE, Board Member, in her individual and**
**official capacities**                                                           **DEFENDANTS**

## ORDER

Before the court are defendants' motion for summary judgment (Doc. No. 37),

plaintiff's motion for sanctions (Doc. No. 43), plaintiff's motion to compel (Doc. No. 44),

and plaintiff's motion to compel (Doc. No. 46).

## I.  FACTUAL BACKGROUND

Plaintiff Lisa Barnes-McNeely applied for the position of grievance officer at the

Diagnostic Unit of the Arkansas Department of Correction ("ADC") on January 22, 2008.

Ex. A, defendants' motion for summary judgment ("defs.' motion").   Her application

indicates that she has a Bachelor's Degree in Criminal Justice and Sociology. *Id*.

Kevin Murphy, the Human Resources Administrator for the ADC, states by affidavit

that Barnes-McNeely failed to show up for her interview, and therefore, she was not

interviewed or considered for the position. Ex. C, defs.' motion. He states that this is the

case for all applicants who fail to show, not just Barnes-McNeely. *Id*. He states that it is

noted on Barnes-McNeely's application that she declined the interview. *Id*. Murphy also

states that members of the Arkansas Board of Correction do not hire employees for the ADC,

and were not personally involved in the application or interview process regarding Barnes-

McNeely's January 22, 2008, application. *Id*. He further states that he and Director Larry

Norris were not personally involved in the application or interview process regarding Barnes-

McNeely's January 22, 2008, application. *Id*.

In an affidavit submitted by Tammy Luckett, the Human Resources Manager for the

ADC Randall Williams Unit, she states that she scheduled Barnes-McNeely for an interview

on February 11, 2008, at approximately 3:30 p.m. Ex. D, defs.' motion. She states that

several applicants cancelled or failed to show up for earlier interview times on February 11,

2008, and that she telephoned Barnes-McNeely to ask if she was able to interview at

approximately 1:00 p.m. *Id*. Luckett states that Barnes-McNeely said that she was

babysitting, and may not be able to make arrangements for the children. *Id*. Luckett states

that she explained to Barnes-McNeely that she was not required to come in at the earlier

time.  *Id.*  In response, Barnes-McNeely said she would try to make arrangements and would

call Luckett back.  *Id*.  Luckett states that she made similar courtesy calls to all applicants

who were scheduled for late afternoon appointments.  *Id*.  Luckett states that she did not hear

from Barnes-McNeely again and that Barnes-McNeely failed to show for either the 1:00 p.m.

interview time or the 3:30 p.m. interview time.  *Id.*  Barnes-McNeely was not considered for

the position because she was not interviewed.  *Id.*  Luckett states that, when she spoke with

Barnes-McNeely regarding her appointment time, she was unaware that Barnes-McNeely had

filed a previous lawsuit against the ADC or that Barnes-McNeely was black.  *Id.*

On April 7, 2008, Barnes-McNeely filed an Equal Employment Opportunity

Commission ("EEOC") charge of discrimination, checking the "retaliation" box, and stating:

> I was scheduled for an interview on February 14, 2008.  On February 11, 2008,
> at approximately 1:30 p.m. I was contacted and advised that my interview had
> been moved up from February 14th to February 11, 2008 at 2:00 p.m.  Due to
> the short notice, I was unable to make the interview.
>
> I believe that I was treated in the above manner in retaliation for my Federal
> Discrimination lawsuit filed against the above-named employer, in violation
> of Title VII of the Civil Rights Act of 1964, as amended.

Ex. E, defs.' motion.  Barnes-McNeely's right to sue letter was mailed on April 17, 2008.

*Id*.

Barnes-McNeely filed the present lawsuit on July 21, 2008, pursuant to Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq*., and 42 U.S.C. § 1981.

Therein, she alleges that she was not hired as a grievance officer with the ADC because of

her race and in retaliation for filing a previous lawsuit.

A letter dated March 24, 2009, notes that defense counsel attempted to contact Barnes-McNeely to schedule her deposition on several occasions by several means, but had been unable to reach her, so a notice to take Barnes-McNeely's deposition on March 30, 2009, at 2:00 p.m. was sent.  Ex. B, defs.' motion.  A letter dated March 27, 2009, states that after a conversation between Barnes-McNeely and defense counsel, the deposition was rescheduled by agreement to March 31, 2009, at 10:00 a.m.  *Id*.  The record reflects that when Barnes-McNeely failed to appear for her deposition, defense counsel called Barnes-McNeely at 10:15 a.m., and she stated that she believed the deposition began at 11:00 a.m.  *Id*.  Defense counsel agreed to wait until 11:00 a.m.  *Id*.  Barnes-McNeely still failed to appear for her deposition.  As a result of her failure to appear, defendants incurred costs of $191.00.  Ex. G, defs.' motion.

## II.  MOTIONS TO COMPEL AND FOR SANCTIONS

In her motion for sanctions (Doc. No. 43), Barnes-McNeely asserts that defense counsel forged her signature on a document submitted to the court, which constitutes identity theft and fraud, and submitted the document without consulting her.  It appears that Barnes-McNeely is referring to the joint Rule 26(f) report.  Barnes-McNeely requests a continuance because the trial is scheduled on her child's birthday.  Barnes-McNeely also asserts that defendants have failed to cooperate with discovery and have submitted a motion for summary judgment, which prejudices her.

In response, defendants submit an e-mail sent to Barnes-McNeely with the proposed

Rule 26(f) report.  Defendants state that Barnes-McNeely subsequently gave her verbal

consent to file the joint Rule 26(f) report in a telephone conversation.  Defendants note that

the signature of Barnes-McNeely is not on the Rule 26(f) report, and that her identity is still

intact.  Defendants also note that Barnes-McNeely only filed her motion on April 30, 2009,

despite the fact that the Rule 26(f) report was filed on November 17, 2009.

In her first motion to compel (Doc. No. 44), Barnes-McNeely alleges that defendants

have failed to respond to discovery sent to them on March 3, 2009.  She states that she needs

this discovery to adequately respond to the motion for summary judgment.  Specifically, she

states that she has made a prima facie case of discrimination and failure to hire, and that the

documents withheld will prove that blacks are being kept from front office positions and that

only four of the sixty-four administrators that the Director of the ADC has hired are black.

In response, defendants state that Barnes-McNeely did not mail her discovery requests

to defendants until March 18, 2009.  Defendants state that the court's scheduling order

requires discovery to be propounded with sufficient time to respond prior to the discovery

deadline of March 30, 2009, and thus, the requests were untimely.  Defendants assert that

even if the requests were mailed, as alleged, on March 3, 2009, they were still untimely.

Defendants also note that the court's scheduling order makes clear that it will not settle

discovery disputes arising out of matters occurring outside of the discovery deadline.

Defendant state that despite the fact that the requests were untimely, defendants gathered and

mailed their responses to the discovery requests.  Defendants also state that Barnes-McNeely

has failed to confer with them regarding discovery, and that if Barnes-McNeely called her

office and got the "answering machine" as alleged, she failed to leave any messages.

In her second motion to compel (Doc. No.  46), Barnes-McNeely asserts that

defendants abruptly responded to her discovery requests after the first motion to compel was

filed.  She also states that the responses provided are insufficient.  Barnes-McNeely requests

that the court deny the summary judgment motion until defendants have cooperated with

discovery.

In response, defendants state that Barnes-McNeely's discovery requests were

untimely, as discussed above, and that she has failed to confer in good faith with defense

counsel regarding discovery matters.  Defendants also state that the interrogatories and

requests for production were overly broad, confusing, argumentative, nonsensical, and almost

impossible to answer.  Additionally, defendants state that the questions regarding the

"administrators" and the gender of administrators are irrelevant because Barnes-McNeely

applied for a "grievance officer" position, not an "administrator" position, and she alleges

race discrimination, not gender discrimination.  Defendants further state that they have no

knowledge of the "sixty-four" administrators or the "directory" to which Barnes-McNeely

repeatedly refers.

Finally, defendants assert that the complaint should be dismissed because Barnes-

McNeely has failed to cooperate in the discovery process by failing to attend her own

deposition, and that Barnes-McNeely should be assessed defendants' cost of defending this action, including the deposition expenses. Additionally, defendants state that the motion for summary judgment should be granted because Barnes-McNeely has failed to respond and has failed to controvert the facts therein.

The court finds that Barnes-McNeely has failed to comply with Local Rule 7.2 with regard to her motions. Additionally, she has failed to adequately support her allegations with any evidence. The court agrees with defendants that Barnes-McNeely's discovery requests were untimely. Nevertheless, it is clear that defendants attempted to respond to the requests as best they could considering the confusing, overbroad, and often irrelevant nature of the requests. Barnes-McNeely's objections regarding the trial date and Rule 26(f) report are overruled. Furthermore, the court notes Barnes-McNeely's failure to adequately participate in the discovery process, but declines to dismiss the case on this basis due to the court's resolution of the pending motions.

## III.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## IV.  MOTION FOR SUMMARY JUDGMENT

Defendants assert that summary judgment is appropriate as to all of Barnes-McNeely's claims. In response, Barnes-McNeely asks the court to delay ruling on the motion for summary judgment until defendants provide the requested discovery. As discussed above, Barnes-McNeely's motions to compel are denied. Barnes-McNeely fails to submit any facts, evidence, or argument in support of her opposition to defendants' motion for summary judgment.

To the extent that Barnes-McNeely's submissions can be construed as a motion pursuant to Federal Rule of Civil Procedure 56(f), the motion is denied. Barnes-McNeely failed to "'show[] by affidavit that, for specified reasons, [she] cannot present facts essential to justify [her] opposition' to the summary judgment motion." *Ballard v. Heineman*, 548 F.3d 1132, 1137 (8th Cir. 2008) (quoting Fed. R. Civ. P. 56(f)). Additionally, she failed to show, by affidavit, specific facts that further discovery might uncover. *Id*. Thus, the court will consider the merits of the motion for summary judgment.

**A.      Title VII Race Discrimination Claim**

Defendants assert that Barnes-McNeely failed to exhaust her administrative remedies regarding her race discrimination claim, and therefore, the claim is barred. A Title VII plaintiff must exhaust administrative remedies by timely filing an administrative charge with the EEOC and receiving a right-to-sue letter before bringing suit in federal court. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id*. (internal citations and quotations omitted). "Although a plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC, it is well established that retaliation claims are not reasonably related to underlying

discrimination claims." *Wallin v. Minnesota Dep't of Corrs.*, 153 F.3d 681, 688 (8th Cir.

1998).

The record does not indicate that Barnes-McNeely timely filed a charge of

discrimination or received a right to sue letter regarding any claims of race discrimination.

Therefore, Barnes-McNeely has failed to exhaust her administrative remedies and summary

judgment is granted as to her Title VII race discrimination claim.

Although summary judgment is appropriate because Barnes-McNeely's Title VII race

discrimination claim is barred for failure to exhaust her administrative remedies, summary

judgment would be appropriate even her Title VII race discrimination claim was not barred.

To establish a  prima facie case of discriminatory failure to hire, Barnes-McNeely would

have to prove: (1) she is a member of a protected class; (2) she applied and was qualified for

a job for which the employer was seeking applicants; (3) she was rejected; and (4) after she

was rejected, ADC continued to seek applicants with her qualifications. *Harrison v. United*

*Auto Group*, 492 F.3d 972, 974 (8th Cir. 2007).  ADC must then rebut the presumption of

discrimination by producing evidence that Barnes-McNeely was rejected for a legitimate,

nondiscriminatory reason, and if ADC does so, Barnes-McNeely must establish the existence

of facts which if proven at trial would permit a jury to conclude that ADC's proffered reason

is pretextual.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 958 (8th Cir. 1995).

It is undisputed that Barnes-McNeely is a member of a protected class and that she

meets the minimum qualifications for a grievance officer.  Barnes-McNeely, however, cannot

establish a prima facie case because it is undisputed that she failed to complete the

application process by failing to appear for her interview.  Not only has she failed to dispute

that her interview was set for February 11, 2008, at 3:30 p.m., and that she failed to show,

but she has also failed to show or allege that she appeared for an interview on any other day,

including February 14, 2008, the day she claims her interview was originally set for.

Even if Barnes-McNeely could establish a prima facie case, there is nothing in the

record to show that the ADC's legitimate, nondiscriminatory reason for its failure to hire her

was pretext.  As discussed above, Barnes-McNeely simply failed to show up for her

interview, which was a prerequisite to being considered for the job.  Further, Barnes-

McNeely does not dispute that Luckett, the person who allegedly sabotaged her opportunity

to interview, had no clue that Barnes-McNeely was black.  Finally, Barnes-McNeely does

not dispute that all applicants that failed to appear for an interview, regardless of race, were

removed from considered for the position.

**B.      Title VII Retaliation Claim**

Defendants assert that no employer-employee relationship exists between the

individual employees of the ADC and the Arkansas Board of Correction ("ABC"), one the

one hand, and Barnes-McNeely, on the other hand.  For this reason, defendants assert that

the claims against them are not cognizable.  Defendants note that Murphy's affidavit

demonstrates that the ABC does not hire employees for the ADC, and none of the defendants

were personally involved in Barnes-McNeely's application or interview process. Barnes-McNeely does not respond to these assertions.

"[S]upervisors and other employees cannot be held liable under Title VII in their individual capacities." *Lenhardt v. Basic Inst. of Tech., Inc.*, 55 F.3d 377, 381 (8th Cir. 1995); *see also Clegg v. Ark. Dep't of Corrs.*, 496 F.3d 922, 931 (8th Cir. 2007). Furthermore, the undisputed record indicates that the ABC is not an "employer" under Title VII. Barnes-McNeely's Title VII claims against defendants, Norris and Murphy, in their individual capacities, and the ABC are dismissed. Additionally, summary judgment is appropriate as to Barnes-McNeely's Title VII claims against defendants, Baker, Parker, Brownlee, Ferren, Jiles, Magness, and Pace, in their official and individual capacities.

To the extent that Barnes-McNeely's retaliation claims survive, retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922 (8th Cir. 2007). "In order to establish a prima facie case of retaliation, the employee must produce evidence: (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Id.* (internal citations omitted). If Barnes-McNeely establishes a prima facie case, the court must examine whether defendants have offered a legitimate, nonretaliatory reason for its actions and whether Barnes-McNeely has presented any evidence that the explanation given is pretextual. *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1028 (8th Cir. 2004).

"An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation. *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (internal citations omitted). In *Kipp v. Missouri Highway Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002), the Eighth Circuit held that "the interval of two months between the complaint and [the plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link." "The further in proximity the decision to terminate is from the protected activity, the less suspect the decision to terminate becomes." *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 774 (8th Cir. 2003).

Here, Barnes-McNeely has failed to establish causation. It appears that Barnes-McNeely filed her previous lawsuit against the ADC in August 2006, and the alleged retaliation occurred in January 2008. Additionally, Barnes-McNeely's retaliation claim essentially asserts that Luckett, who is not a party to this lawsuit, intentionally sabotaged her opportunity to interview for the grievance officer position by changing her interview time in retaliation for a previous lawsuit against the ADC. It is, however, undisputed that, at the time Luckett spoke with Barnes-McNeely, she had no knowledge of Barnes-McNeely's previous claims against the ADC. Therefore, summary judgment is appropriate on this claim.

**C.     42 U.S.C. § 1981 Claims**

Discrimination and retaliation claims under 42 U.S.C. §§ 1981 and 1983 are also analyzed under the *McDonnell Douglas* burden-shifting framework. *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922 (8th Cir. 2007); *Putman v. Unity Health System*, 348 F.3d 732, 735 n.2 (8th Cir. 2003). As set forth above, nothing in the record supports Barnes-McNeely's claims of race discrimination or retaliation. Therefore, summary judgment is appropriate as to her race discrimination and retaliation claims pursuant to 42 U.S.C. § 1981.

The court also notes that Barnes-McNeely's 42 U.S.C. § 1981 claims against the ADC and the ABC are barred by sovereign immunity, and that Barnes-McNeely's 42 U.S.C. § 1981 claims for monetary relief against the state officials in their official capacities are barred by sovereign immunity. *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007); *Singletary v. Missouri Dep't of Corrs.*, 423 F.3d 886, 890 (8th Cir. 2005); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (holding that the Eleventh Amendment bars suit against agencies of the State of Arkansas, but plaintiff may seek equitable relief against state officials acting in their official capacities); *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991).

Furthermore, "[a] federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989), with approval). To the extent Barnes-McNeely's claims could be construed as claims

pursuant to 42 U.S.C. § 1983, they also fail on the merits and sovereign immunity applies in the same manner.  Summary judgment is granted.

**D.     Failure to Appear at Deposition**

Defendants also requests deposition costs in the amount of $191.00 incurred when Barnes-McNeely failed to appear for her deposition.  *See* Exhibit G, defs.' motion.  Pursuant to Federal Rule of Civil Procedure 37(d), the court orders plaintiff Lisa Barnes-McNeely to pay the costs of the deposition in the amount of $191.00.

Accordingly, plaintiff's motion for sanctions (Doc. No. 43), plaintiff's motion to compel (Doc. No. 44), and plaintiff's motion to compel (Doc. No. 46) are denied. Defendants' motion for summary judgment (Doc. No. 37) is granted.  Pursuant to Federal Rule of Civil Procedure 37(d), the court orders plaintiff Lisa Barnes-McNeely to pay the costs of the deposition in the amount of $191.00.  Judgment will be entered accordingly.

IT IS SO ORDERED THIS 21st day of May, 2009.


_____
UNITED STATES DISTRICT JUDGE